**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SEAN THOMPSON, | ) | CASE NO. CV 14-00142 RZ |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| vs. | ) | AND ORDER |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

Plaintiff Sean Thompson challenges the Social Security Commissioner's decision denying him disability benefits on several grounds. Finding his arguments unpersuasive, the Court affirms.

Plaintiff first asserts that the Administrative Law Judge erred in declining to find severe impairments based on physical limitations. Plaintiff asserts that the record contains evidence of knee problems, hypertension, tinnitus, obesity and gastrointestinal reflux disease. The Administrative Law Judge, however, only found severe mental impairments. [AR 16]

The regulations do not define what constitutes a "severe" impairment. Instead, they state what a *non*-severe impairment is: one that does not significantly limit physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. The basic work activities are "the abilities and aptitudes necessary to do most jobs,"

including various physical and mental activities. *Id.*   The requirement of having a severe impairment performs a gatekeeping function, screening out frivolous complaints. *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987).   In its internal procedures, the Social Security Administration assesses an impairment as "non-severe" if it has no more than a minimal effect on the individual's ability to do basic work functions.   SSR 85-28.   This minimalist treatment has received the Courts' imprimatur. *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).   Thus, the requirement that a claimant have a severe impairment has been transmogrified into a requirement that the claimant have an impairment that is not very severe at all — it simply must have more than a minimal effect on his or her ability to do basic work functions.   When the Commissioner rests his decision on the failure to satisfy the severity requirement, that decision, as with any other, must rest on substantial evidence within the record. *Smolen v. Chater, supra,* 80 F.3d at 1289-90.

The primary physical ailment referenced in the record concerns Plaintiff's knees.   The Administrative Law Judge found as follows:

> The undersigned does not find a severe impairment related to the claimant's knee.   The claimant had surgery on his knee over 10 years ago and there is little evidence from his treating sources regarding any knee problems after the amended alleged onset date [May 5, 2006] (Exhibit 7F).   Examination of the claimant's knee on January 24, 2012 showed only crepitance [sic], with no effusion or obvious deformity (Exhibit 13F at 3).   The consultative examiner examined the claimant and found that the claimant could stand 6 hours of an 8 hour day.   This suggests that the claimant's knee would not functionally impact the

claimant or significantly limit the claimant's ability to perform work-related activities and is, thus, non-severe.

[AR 18]

Plaintiff makes essentially two challenges to this finding. First, he asserts that the record contains a variety of references to Plaintiff's knee problems, implying that therefore the finding of non-severity must be erroneous. Second, he asserts that the examining physicians recommended limitations based on physical impairments, and thus that the Administrative Law Judge erred in finding no severe physical impairment. Neither argument carries the day.

Plaintiff's argument about the record references to his knee problems carries no weight, for Plaintiff has mis-cited the record in numerous respects. He asserts that a September 7, 2009 V.A. report states that Plaintiff is totally disabled because of his knee pain (Plaintiff's Memorandum at 5:8-9). The report, however, is from 2004, not 2009 [AR 286], and Plaintiff alleged that his onset date was two years later, in 2006. [AR 14] Plaintiff alleges that in July 2010 he again "received treatment for bilateral knee pain, when he was diagnosed with degenerative disease in his knees and was recommended to have another knee MRI." (Plaintiff's Memorandum at 5:22-23). The MRI, however, revealed "normal knees without evidence of acute knee osseous degenerative disease, unchanged in six years." [AR 259] Plaintiff states that "[o]n October 8, 2010 he was noted to have a tear in the medial cartilage or meniscus of his knee and knee arthralgia." (Plaintiff's Memorandum at 5:23-25.) In fact, however, it was a history that was prepared on October 8, 2010, and it showed that it was on September 13, 2004 (as noted above, before Plaintiff's onset date) that Plaintiff had a tear of medial cartilage or meniscus of knee. [AR 263] Plaintiff states that on March 7, 2011, "he was noted to have bilateral knee pain with intermittent swelling." (Plaintiff's Memorandum at 5:25-26.) In fact, however, Plaintiff *complained* of these symptoms (on February 14, 2011, not on March 7, 2011 [AR 248]), and he had failed to keep an appointment for an MRI to evaluate them, because of lack of

transportation [AR 248]; the assessment plan stated "Will need MRI." [AR 249]   The record does not contain the results of a subsequent MRI, so far as the Court can tell; as noted, an MRI performed just seven months earlier had shown normal knees that had not changed when compared to MRI's performed six years earlier.   [AR 259]   Plaintiff states that he received medical treatment through the parole department in 2012, and his left knee pain "was repeatedly referenced."   One of those "references" concerned an evaluation in 2010, not 2012 [AR 259] and two of the three other references were to 2004, not 2012. [AR 407, 416]   In short, Plaintiff's description of the record with respect to his knees largely shows various record references that have nothing to do with severity as of the pertinent time; the argument is not persuasive as a reason to overturn the Administrative Law Judge's determination of non-severity.

Nor does Plaintiff's second argument fare any better.   Plaintiff notes that the state agency's internal medicine consultative examiner diagnosed Plaintiff with bilateral knee pain with a torn meniscus in his left knee.   The doctor's diagnosis, however, derived from Plaintiff himself.   The information in the report was obtained from Plaintiff, and the doctor had no records available to review.   [AR 219]   He had no MRI to review [*id.*] and no x-rays or other diagnostics were referred to in the report either.   In short, there was no verification of Plaintiff's statement that Plaintiff had a tear of his meniscus at the time that he saw the doctor.

The subsequent non-examining state physician, Plaintiff states, interpreted the examining physician's opinion as supporting a finding that "plaintiff was more aptly limited to light work."   [AR 239]   In fact, however, the state physician said that the consultant's opinion "*may* reduce him to functionally light." [AR 239, emphasis added] The state physician, then, was not definitive as Plaintiff has suggested, and was merely interpreting the opinion of the examining physician which was, as noted, based only on Plaintiff's reporting and not on the results of the MRI, taken just a few months before the state physician's statement.

In short, the arguments made do not show any error in the Administrative Law Judge's determination that Plaintiff's knee problems did not constitute a severe impairment. Substantial evidence supported the Administrative Law Judge's determination on this issue.

As Plaintiff notes, the record also contains references to tinnitus, obesity, hypertension and GERD. The record does not show, however, that any of these matters, separately or together, imposed any limitations on Plaintiff's ability to perform basic work functions, which is the definition of severity. An administrative law judge is not required to discuss all evidence, only probative evidence, and need not explain why he is not discussing non-probative evidence. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). Likewise, an administrative law judge need not present limitations in a hypothetical question to a vocational expert, if those limitations have not been proven by the claimant. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("the ALJ did not err in omitting the other limitations that [the claimant] had claimed, but had failed to prove."). The additional physical problems fall into these categories.

Plaintiff also asserts that the Administrative Law Judge wrongly discredited the opinion of Plaintiff's treating psychiatrist Dr. Flynn. Dr. Flynn submitted check lists and short answers on a questionnaire indicating that Plaintiff was greatly restricted by his mental impairments. [AR 421 et seq.] In contrast, the consulting psychiatrists imposed few limitations. [AR 217, 235] The Administrative Law Judge, perhaps giving Plaintiff some benefit of the doubt, imposed greater restrictions than the consultants had, although he gave little weight to the suggestions of the treating physician Dr. Flynn. [AR 20]

"To reject the opinion of a treating physician which conflicts with that of an examining physician, the ALJ must '"make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."' [citations omitted]  'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.' [citation omitted]." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

1       The Administrative Law Judge complied with this standard, addressing several
2   reasons that he could not accept the significant limitations Dr. Flynn recommended.  He
3   noted that there was no objective evidence supporting such significant limitations; that
4   Plaintiff's mental health treatment notes showed that Plaintiff generally was doing well,
5   and that he responded well to medication; and that the treatment records repeatedly showed
6   that Plaintiff was working, a fact that was inconsistent with the level of functioning that Dr.
7   Flynn found.  [AR 20]  Plaintiff disputes these findings, but they are within the province
8   of the Administrative Law Judge to make.  *Batson v. Commissioner of Social Security*, 359
9   F.3d 1190, 1195 (9th Cir. 2004).

10      Plaintiff also asserts that the Administrative Law Judge wrongly discounted
11  his credibility.  The Administrative Law Judge noted Plaintiff's assertions that he had had
12  emotional problems since his accident, was depressed all the time, has panic attacks and
13  tries to avoid being around people.  [AR 19]  He then gave reasons for not entirely
14  crediting this testimony:  that the treatment evidence does not support the allegations; that
15  the treatment was limited and conservative; that there was no evidence that medications
16  were not working, once the appropriate dosages were determined; and that Plaintiff saw
17  Dr. Flynn only about four times.  [AR 20]  An administrative law judge is entitled to use
18  ordinary techniques of evaluating evidence when judging credibility as to subjective
19  symptoms.  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  Inconsistency with
20  objective evidence, while insufficient if standing alone, nevertheless is a relevant factor.
21  *Rollins v. Massanari*, 261 F. 3d 853, 857 (9th Cir. 2001).  So is conservative treatment.
22  *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995).  So is the efficacy of medication.
23  *Warre v. Commissioner of Social Security Administration*, 439 F.3d 1001, 1006 (9th Cir.
24  ///
25  ///
26  ///
27  ///
28  ///

2006).  The Administrative Law Judge thus acted appropriately in evaluating Plaintiff's subjective symptoms.

In accordance with the foregoing, the decision of the Commissioner is affirmed.

DATED:   October 30, 2014

_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE